# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

AVALON CORRECTIONAL SERVICES, INC., )
                        )

       Plaintiff-Counterclaim Defendant )

v. )

RAVENSWOOD INVESTMENT )
COMPANY, L.P., and RAVENSWOOD )
INVESTMENTS III, L.P. )

       Defendants-Counterclaim/Third Party )
       Claim Plaintiffs, )

v.             .                 )

DONALD E. SMITH, )

       Third Party Defendant. )

Case No. 09-CV-70-R
(Judge David Russell)

## ANSWER, COUNTERCLAIMS, AND THIRD PARTY CLAIMS

Plaintiff, the Ravenswood Investment Company, L.P. and Ravenswood Investments III, L.P. (together, "Ravenswood"), set forth their ANSWER, COUNTERCLAIMS, AND THIRD PARTY CLAIMS against AVALON CORRECTIONAL SERVICES, INC. ("Avalon") and DONALD E. SMITH ("Smith"), as follows:

## ANSWER

Ravenswood responds to the Complaint of AVALON CORRECTIONAL SERVICES, INC dated January 16, 2008 as follows:.

1.      Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 1 of the Complaint on the grounds that

Paragraph 1 calls for a legal conclusion. Admits the allegations contained in the second sentence of Paragraph 1 of the Complaint.

2.      Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint on the grounds that Paragraph 2 calls for a legal conclusion.

3.      Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint on the grounds that Paragraph 3 calls for a legal conclusion.

4.      Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint on the grounds that Paragraph 4 calls for a legal conclusion.

5.      Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint.

6.      Admits the allegations contained in Paragraph 6 of the Complaint.

7.      Admits the allegations contained in Paragraph 7 of the Complaint.

8.      Denies having knowledge sufficient to form a belief as to the truth of all the allegations contained in Paragraph 8 of the Complaint and denies on the grounds that Paragraph 8 calls for a legal conclusion.

9.      Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint on the grounds that Paragraph 9 calls for a legal conclusion.

10.     Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint, except admits that on January 13, 2008, Ravenswood delivered to Avalon a demand to inspect its books and records.

11.     Admits the allegations contained in Paragraph 11 of the Complaint.

12.     Admits the allegations contained in Paragraph 12 of the Complaint.

13.     Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint and denies on the grounds that Paragraph 13 calls for a legal conclusion.

14.     Admits the allegations contained in Paragraph 14 of the Complaint.

15.     Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint on the grounds that Paragraph 15 calls for a legal conclusion.

16.     Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint on the grounds that Paragraph 16 calls for a legal conclusion.

17.     Admits the allegations contained in Paragraph 17 of the Complaint.

18.     Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint on the grounds that Paragraph 18 calls for a legal conclusion.

19.     Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint on the grounds that Paragraph 19 calls for a legal conclusion.

20.      Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint on the grounds that Paragraph 20 calls for a legal conclusion.

21.      Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint on the grounds that Paragraph 21 calls for a legal conclusion.

22.      Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint on the grounds that Paragraph 22 calls for a legal conclusion.

23.      Admits the first sentence of Paragraph 23.  Denies having knowledge sufficient to form a belief as to the truth of the allegations contained in the remainder of Paragraph 23 of the Complaint on the grounds that such remainder of Paragraph 23 calls for a legal conclusion.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

24.      Plaintiff fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

25.      Plaintiff fails to allege facts sufficient to permit a declaratory judgment.

## THIRD AFFIRMATIVE DEFENSE

26.      Plaintiff's claim is barred by the doctrines of waiver, estoppel, laches, unclean hands and/or acquiescence.

## FOURTH AFFIRMATIVE DEFENSE

27.      Plaintiff's claim is barred by the doctrines of issue and/or claim preclusion.

## FIFTH AFFIRMATIVE DEFENSE

28.     Defendants reserve all affirmative defenses under Rule 8(c) of the Federal Rule of Civil Procedure and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

The following paragraphs are concurrently alleged as Ravenswood's Counterclaims against Avalon and Ravenswood's Third Party Complaint against Smith.

## COUNTERCLAIMS AND THIRD PARTY CLAIMS

## STATEMENT OF THE CASE

29.     Ravenswood's counterclaims and third party claims are direct, derivative and class action claims seeking damages resulting from Third Party Defendant Smith's intentional breaches of his fiduciary duties and gross negligence.

30.     Avalon is a publicly-traded corporation that on February 3, 2005 deregistered with the Securities and Exchange Commission, by filing a Form 15, and stopped publicly filing its financial and other reports with the Securities and Exchange Commission.

31.     Smith is the controlling shareholder of Avalon.

32.     Smith is the Chief Executive Officer of Avalon.

33.     Smith is the sole director of Avalon.

34.     Avalon is in the business of providing correctional services for inmates in the form of minimum security housing facilities and halfway houses.

35.     As controlling shareholder, Chief Executive Officer, and sole director of Avalon, Smith has breached his duties to all other non-controlling shareholders by entering into self dealing transactions that benefit him at the cost of the non-controlling shareholders.

36.     Ravenswood are non-controlling shareholders.

## JURISDICTION AND VENUE

37.     THE RAVENSWOOD INVESTMENT COMPANY, L.P. is a New York limited partnership located at 104 Gloucester Road, Massapequa, New York 11758

38.     RAVENSWOOD INVESTMENTS III, L.P. is a New York limited partnership located at 104 Gloucester Road, Massapequa, New York 11758.

39.     THE RAVENSWOOD INVESTMENT COMPANY, L.P. is currently a shareholder of Plaintiff AVALON CORRECTIONAL SERVICES, INC. and has been a shareholder of Plaintiff AVALON CORRECTIONAL SERVICES, INC. since July 12, 2004.

40.     RAVENSWOOD INVESTMENTS III, L.P. is currently a shareholder of Plaintiff AVALON CORRECTIONAL SERVICES, INC., and has been a shareholder of Plaintiff AVALON CORRECTIONAL SERVICES, INC. since April 2, 2007.

41.     AVALON CORRECTIONAL SERVICES, INC. is a Nevada corporation whose principal place of business is 13401 Railway Drive, Oklahoma City, Oklahoma 73114.

42.     DONALD E. SMITH ("Smith") is a resident of Oklahoma.

43.     The Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332(a).

44.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1392.  Venue is proper in this Court in that the claims arose in this district, a substantial part of the events and omissions giving rise to the claims occurred in this

district and a substantial part of the property that is the subject of the action is situated in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

45.     Defendant Smith, as the controlling shareholder, CEO and sole director engaged in a scheme to systematically divert cash and stock from the Company to himself and other officers and insiders.

46.     In 2006, Avalon had net income of $28,000.00.

47.     In 2006, Smith caused Avalon to purchase 83,700 of its own shares of Common Stock for $162,000.00, or almost six times Avalon's net income.

48.     Smith did not cause the Company to retain the shares so purchased, which would have benefitted all shareholders.

49.     Instead, Smith caused Avalon to pledge the shares to a trust as collateral for a supplemental executive retirement plan ("SERP").

50.     Smith and other officers and insiders of Avalon are the primary beneficiaries of the SERP.

51.     In 2006, Smith caused Avalon to contribute $413,000.00 in cash, or 1475% of net income in that year, to the SERP.

52.     In 2006, Smith caused Avalon to make payments of $227,000, or over eight times net income, to an entity controlled by him ("Smith Transportation Entity") for lease payments on transportation equipment.

53.     In 2006, Smith caused Avalon to pledge, expend or distribute for the benefit of Smith and other officers approximately $802,000.00, or almost 20 times net income, in cash or stock, exclusive of salaries, bonuses and benefits paid to Smith, other officers and insiders.

54.     In 2007 Avalon had net income of $1,153,000.00.

55.     In 2007, Smith caused Avalon to sell 400,000 of dividend-paying preferred stock for $1 per share to himself as an individual, other officers of Avalon and other insiders.

56.     There was no economic reason for the sale of preferred stock to insiders.

57.     In 2007, Third Party Defendant Smith caused Avalon to purchase 215,522 of its own shares of Common Stock for $734,000.00, or $3.41 per share.

58.     After the above-described repurchase, Smith again caused Avalon to pledge these shares to a trust as collateral for the SERP.

59.     In 2007, Third Party Defendant Smith caused Avalon to loan $291,000.00 to himself and other senior executives.

60.     The funds lent by Avalon were used to make purchases of common stock and preferred stock.

61.     Also in 2007, Third Party Defendant Smith caused Avalon to make contributions of $436,000.00 to the SERP.

62.     In 2007, Third Party Defendant Smith caused Avalon to contribute $507,000.00 to a separate retirement plan solely for his benefit ("CEO Retirement Plan").

63.     In 2007, Third Party Defendant Smith caused Avalon to make payments of $313,000.00 to the Smith Transportation Entity in 2007.

64.     In 2007, Smith caused Avalon to pledge, expend or distribute for his benefit and the benefit of other officers and insiders $2.28 million, almost double net income, in cash and stock, exclusive of salaries, bonuses, and benefits paid to Smith, other officers and insiders.

65.     Accordingly, since Avalon had $2.28 million to spend on these uneconomic activities, there was no economic reason to sell the preferred stock to insiders for $400,000.00.

66.     In the first three quarters of 2008 Avalon had a net loss of $30,000.00.

67.     During the first three quarters of 2008 Smith caused Avalon to purchase 111,985 of its own shares of Common Stock for $335,000, or $2.99 per share.

68.     Smith caused Avalon to pledge these 111,985 shares to a trust as collateral for the SERP.

69.     Smith caused Avalon to make contributions of $436,000.00 to the SERP.

70.     Smith caused Avalon to contribute an unknown amount to the CEO Retirement Plan in the first three quarters of 2008.

71.     Smith caused Avalon to make payments of an unknown amount to the Smith Transportation Entity.

72.     In the first three quarters of 2008 Smith caused Avalon to pledge, expend or distribute for his benefit and the benefit of other officers and insiders at least $771,000.00

in cash and stock – when Avalon had a net loss of $30,000 during such period --
exclusive of salaries, bonuses, and benefits that Avalon paid to Smith, other officers and
insiders.

73.     The current Avalon board of directors consists of one member, Smith, who
is the Chief Executive Officer and controlling shareholder of Avalon.

74.     Smith is not independent with regard to the allegations made in this lawsuit.

75.     Therefore, it is futile for Ravenswood to make a demand upon Avalon's
Board of Directors to pursue Avalon's claims on behalf of its shareholders (as detailed
herein) against Smith.

76.     Demand futility is demonstrated by Avalon because Avalon has just sued
Ravenswood in the Complaint.

77.     Ravenswood allege that this derivative action is not a collusive action to
confer jurisdiction that the court would otherwise lack.

78.     The non-collusive nature of this derivative action is demonstrated further by
the fact that Avalon has sued Ravenswood of its own accord.

## FIRST COUNTER CLAIM AND THIRD PARTY CLAIM AGAINST SMITH
### Breach of Fiduciary Duty-Direct and Derivative Action
### (Preferred Shares in a Private Non-Competitive Transaction)

79.     Ravenswood repeats and realleges the preceding paragraphs as though fully
set forth herein.

80.     As a director and officer of Avalon, Smith owes fiduciary duties to
Ravenswood and Avalon.

81.     On February 12, 2007, Smith as CEO of Avalon caused the Company to sell to himself, as an individual, other officers and other insiders of the Company, 400,000 shares of the Company's newly-issued preferred stock at $1 per share ("Preferred Stock").

82.     At the same time, during 2007, Avalon had no need to raise capital as Third Party Defendant Smith caused Avalon to purchase 215,522 of its own shares of Common Stock for $734,000.00, or $3.41 per share, and to pledge these shares to a trust as collateral for the SERP.

83.     All told, in 2007, Smith caused Avalon to pledge, expend or distribute for his benefit and the benefit of other officers and insiders $2.28 million, almost double net income, in cash and stock, exclusive of salaries, bonuses, and benefits paid to Smith, other officers and insiders.  Accordingly, there was no necessity to sell the Preferred Stock to insiders to raise capital.

84.     The sales of Preferred Stock of Avalon to Smith and other officers and insiders of Avalon were not public sales.

85.     Upon information and belief, the sales were at less than a fair market price.

86.     The sales of Preferred Stock were for the purpose of enriching Third Party Defendant Smith, other officers and insiders at the expense of other shareholders of Avalon.

87.     During 2007 and 2008, Smith caused Avalon to pay dividends on its Preferred Stock to the holders thereof.

88.     Third Party Defendant Smith intentionally and in bad faith breached his fiduciary duties of care, loyalty, good faith, candor and disclosure by selling to himself as an individual, other officers and insiders Preferred Stock in a private transaction below fair market value at a time when it had no need for the capital raised in the sale of Preferred Stock and by causing Avalon to pay dividends on such Preferred Stock to Smith, other officers and insiders.

89.     Third Party Defendant Smith personally benefited from his breach of fiduciary duties.

90.     Smith's breaches caused Ravenswood and Avalon to suffer damages in an amount to be determined at trial but no less than one million dollars ($1,000,000) plus interest.

91.     Smith's acts and omissions have been with malice, intentional and/or reckless disregard to a degree sufficient to permit and support an award of punitive damages.

## SECOND COUNTER CLAIM AND THIRD PARTY CLAIM AGAINST SMITH
### (Breach of Fiduciary Duty-Direct  and Derivative Action)
### (Repurchase of Shares and Pledge to SERP)

92.     Ravenswood repeat and reallege the preceding paragraphs as though fully set forth herein.

93.     Smith caused Avalon to repurchase 1,622,448 of its own shares for $3,813,000, or $2.35 per share in 2004, 83,700 of its own shares for $162,000, or $1.94

per share in 2006, 215,522 of its own shares for $734,000, or $3.41 per share in 2007 and 111,985 of its own shares for $335,000, or $2.99 per share, as of September 30, 2008.

94.     Smith caused Avalon to pledge these 2,033,655 and other shares to a trust that acts as collateral for a supplemental executive retirement plan ("SERP").

95.     Upon information and belief, Third Party Defendant Smith and other officers and insiders are the primary beneficiaries of the SERP.

96.     Smith's repurchase of shares and pledge of such shares to the SERP was unreasonable and excessive and had no purpose other than to enrich Smith at shareholders' expense.

97.     Smith intentionally and in bad faith breached his fiduciary duties of care, loyalty, good faith, candor and disclosure by causing Avalon to repurchase its shares in order to pledge them to a trust as collateral for the SERP for his own benefit and the benefit of other officers and insiders of Avalon.

98.     Smith personally benefited from his breach of fiduciary duties.

99.     Smith's breaches caused Ravenswood and Avalon to suffer damages in an amount to be determined at trial but no less than $1,200,000.00 plus interest.

100.    Smith's acts and omissions have been with malice, intentional and/or reckless disregard to a degree sufficient to permit and support an award of punitive damages.

### THIRD COUNTER CLAIM AND THIRD PARTY CLAIM AGAINST SMITH
#### (Breach of Fiduciary Duty-Direct and Derivative Action)
#### (Excessive Cash Contributions to Retirement Plan)

101.   Ravenswood repeats and reallege the preceding paragraphs as though fully set forth herein.

102.   Smith caused Avalon to make contributions to the SERP in 2005 in the amount of $372,000, or 26% of $1,413,000 net income; in 2006, in the amount of $413,000, or 1475% of $28,000 net income; in 2007, in the amount of $436,000, or 38% of $1,153,000 net income; and in further amounts during the ninth months ended September 30, 2008 when Avalon had a net loss of $30,000.00.

103.   Smith's causing Avalon to contribute Avalon's cash to the SERP was unreasonable and excessive and had no purpose other than to enrich Smith at shareholders' expense.

104.   Smith intentionally and in bad faith breached his fiduciary duties of care, loyalty, good faith, candor and disclosure by making the above-described contributions to the SERP.

105.   Smith personally benefited from his breach of fiduciary duties.

106.   Smith's breaches caused Ravenswood and Avalon to suffer damages in an amount to be determined at trial but no less than $1,100,000.00 plus interest.

107.   Smith's acts and omissions have been with malice, intentional and/or reckless disregard to a degree sufficient to permit and support an award of punitive damages.

**FOURTH COUNTER CLAIM AND THIRD PARTY CLAIM AGAINST SMITH**
**(Breach of Fiduciary Duty-Direct and Derivative Action)**
**(Excessive Contributions to Separate Retirement Plan Solely for the Chief Executive**
**Officer and Sole Director)**

108.   Ravenswood repeat and reallege the preceding paragraphs as though fully set forth herein.

109.   Smith caused Avalon to create for himself a separate retirement plan into which he caused Avalon to contribute at least $507,000.00 as of December 31, 2007.

110.   Smith's causing Avalon to make contributions of Avalon assets to his own personal retirement plan were unreasonable and excessive and had no purpose other than to enrich Smith at shareholders' expense.

111.   Smith intentionally and in bad faith breached his fiduciary duties of care, loyalty, good faith, candor and disclosure by creating and having Avalon make the above-described contribution to a separate retirement for himself.

112.   Smith personally benefited from his breach of fiduciary duties.

113.   Smith's breaches caused Ravenswood and Avalon to suffer damages in an amount to be determined at trial but no less than $507,000.00 plus interest.

114.   Smith's acts and omissions have been with malice, intentional and/or reckless disregard to a degree sufficient to permit and support an award of punitive damages.

**FIFTH COUNTER CLAIM AND THIRD PARTY CLAIM AGAINST SMITH**
**(Breach of Fiduciary Duty-Direct and Derivative Action)**
**(Lending Money to Executives to Buy Stock)**

115.    Ravenswood repeat and reallege the preceding paragraphs as though fully set forth herein.

116.    Smith caused Avalon to loan money to himself as an individual and other senior executives which totaled $291,000.00 as of December 31, 2007 for purchases of common stock and preferred stock during 2007.

117.    There was no economic reason for Avalon to lend money to Smith to finance Smith's purchase of Avalon preferred stock.

118.    The only reason for Avalon to lend money to Smith to finance Smith's purchase of Avalon preferred stock was to enrich Smith at shareholders' expense.

119.    Smith's acts in causing Avalon to make the above-described loans to himself as an individual and other senior executives intentionally and in bad faith breached Smith's fiduciary duties of care, loyalty, good faith, candor.

120.    Smith personally benefited from his breach of fiduciary duties.

121.    Smith's breaches caused Ravenswood and Avalon to suffer damages in an amount to be determined at trial but no less than $291,000.00 plus interest.

122.    Smith's acts and omissions have been with malice, intentional and/or reckless disregard to a degree sufficient to permit and support an award of punitive damages.

**SIXTH COUNTER CLAIM AND THIRD PARTY CLAIM AGAINST SMITH**
**(Breach of Fiduciary Duty-Direct  and Derivative Action)**
**(Self-Interested Director Transaction-Director Smith Leased Buses from Himself)**

123.   Ravenswood repeat and reallege the preceding paragraphs as though fully set forth herein.

124.   Smith caused Avalon to lease transportation equipment from an entity controlled by himself, and caused Avalon to make payments upon these leases of $68,000 in 2005, $227,000 in 2006, $313,000 in 2007 and an unknown amount in 2008 (the "Lease Payments").

125.   Upon information and belief the Lease Payments were at above market rates.

126.   Smith intentionally and in bad faith breached his fiduciary duties of care, loyalty, good faith, candor and disclosure by causing Avalon to make the above-described payments to lease transportation equipment from an entity controlled by himself.

127.   Smith personally benefited from his breach of fiduciary duties.

128.   Smith's breaches caused Ravenswood and Avalon to suffer damages in an amount to be determined at trial but no less than $600,000.00 plus interest.

129.   Smith's acts and omissions have been with malice, intentional and/or reckless disregard to a degree sufficient to permit and support an award of punitive damages.

**SEVENTH COUNTER CLAIM AND THIRD PARTY CLAIM AGAINST SMITH**
**(Breach of Fiduciary Duty-Direct  and Derivative Action)**
**(Extending Existing Common Stock Purchase Warrants)**

130.   Ravenswood repeat and reallege the preceding paragraphs as though fully set forth herein.

131.   Smith caused Avalon to extend for a term of 15 years the exercise period of 750,000 Common Stock Purchase Warrants granted by Avalon to himself (the "Extension").

132.   The Extension was unreasonable and had no economic purpose other than to enrich Smith at shareholders' expense.

133.   Smith intentionally and in bad faith breached his fiduciary duties of care, loyalty, good faith, candor and disclosure by causing Avalon to extend for a term of 15 years the exercise period of 750,000 Common Stock Purchase Warrants granted by Avalon to himself.

134.   Smith personally benefited from his breach of fiduciary duties.

135.   Smith's breaches caused Ravenswood and Avalon to suffer damages in an amount to be determined at trial but no less than $1,000,000.00 plus interest.

136.   Smith's acts and omissions have been with malice, intentional and/or reckless disregard to a degree sufficient to permit and support an award of punitive damages.

**EIGHTH COUNTER CLAIM AND THIRD PARTY CLAIM AGAINST SMITH**
**(Class Action for Breach of Fiduciary Duty**
**Owed By Controlling Shareholder to Minority Shareholders)**

137.   Ravenswood repeat and reallege the preceding paragraphs as though fully set forth herein.

138.   Smith has, during the times encompassed by the allegations herein, owned and/or controlled more than 50% of the outstanding shares of Avalon and 31% of the issued shares that are held in treasury but are voted by Smith and other insiders.

139.   As a result of his position as controlling shareholder, Smith owed a direct fiduciary duty to the minority shareholders.

140.   Smith has owed a duty to the non-controlling shareholders not to cause Avalon to effect any transaction that would benefit the fiduciary majority shareholder at the expense of the minority stockholders.

141.   Smith intentionally and in bad faith breached his fiduciary duties of care, loyalty, good faith, candor and disclosure by engaging in each of the already enumerated activities.

142.   Smith personally benefited from his breach of fiduciary duties.

143.   Smith's breaches caused Ravenswood and Avalon to suffer damages in an amount to be determined at trial but no less than the sum of the damages alleged in each preceding Count, plus interest.

144.   Smith's acts and omissions have been with malice, intentional and/or reckless disregard to a degree sufficient to permit and support an award of punitive damages.

145.    All minority shareholders of Avalon have been damages by Smith's acts and omissions in a common manner and to a degree proportionate to the shares they hold.

146.    Ravenswood are representative of all minority shareholders.

147.    Ravenswood seek to represent a class of minority shareholders who owned stock at any time from July 12, 2004 to the present.

148.    The claims encompassed by this Court will not require individualized determinations.

149.    The number of shareholders is sufficiently large that joinder of all shareholders would be impractical.

### NINTH COUNTER CLAIM AND THIRD PARTY CLAIM AGAINST SMITH (CLAIM FOR EXAMINATION OF BOOKS AND RECORDS OF CORPORATION PURSUANT TO OKLAHOMA STATUTES, 18 Okl. St. § 1065 (2008))

150.    Ravenswood repeat and reallege the preceding paragraphs as though fully set forth herein.

151.    Ravenswood are shareholders of record of 421,472 shares of Avalon Common Stock.

152.    On January 12, 2008, Ravenswood made a written demand pursuant to Okla. St. tit. 18 § 1065  to inspect, copy and make extracts from the books and records of Avalon.

153.    Plaintiff Avalon received the written demand on January 13, 2009.

154.    Ravenswood stated in its written demand for inspection that its purpose for inspecting corporate books and records is to investigate the existence of mismanagement, breaches of fiduciary duties, waste of corporate assets and self-dealing by incumbent executive officers and the sole director of Avalon, to determine the actual value of shares of Avalon Common Stock, and to communicate with other shareholders regarding the actions to be taken with respect to any of the matters set forth in the written inspection demand.

155.    Plaintiff Avalon (f/k/a Avalon Community Services, Inc.) qualified to do business in the State of Oklahoma on August 26, 1992.

156.    Avalon has failed to timely respond to the written inspection demand.

157.    Accordingly, Ravenswood' are entitled to an Order compelling Avalon to submit to the inspection and copying of the books and records of Avalon.

## TENTH COUNTER CLAIM AND THIRD PARTY CLAIM AGAINST SMITH (DIRECT, DERIVATIVE, AND CLASS CLAIMS FOR UNJUST ENRICHMENT)

158.    Ravenswood repeat and reallege the preceding paragraphs as though fully set forth herein.

159.    Third Party Defendant Smith has been unjustly enriched by each of the already enumerated activities.

160.    Avalon, and each other shareholder of Avalon, including Ravenswood (collectively, "Minority Shareholders"), have been impoverished by each of Third Party Defendant Smith's already enumerated activities, due to the value of their shares being

lessened by Third Party Defendant Smith's diversion of cash and stock from Avalon to himself as already enumerated.

161.    Third Party Defendant Smith's enrichment caused Avalon's and each Minority Shareholder's impoverishment.

162.    There is no justification for Third Party Defendant Smith's enrichment and the Minority Shareholders' impoverishment.

163.    There is no other remedy at law for the Minority Shareholders' impoverishment.

WHEREFORE, Ravenswood pray that this Court:

1.    Grant judgment against Avalon and Smith, and in favor of Ravenswood related to the direct counterclaims and third party claims in an amount to be determined at trial, not less than ten million dollars ($10,000,000) plus interest, and additional punitive damages in an amount to be determined at trial;

2.    Grant judgment against Avalon and Smith, and in favor of the alleged Class related to the class action claims in an amount to be determined at trial, not less than ten million dollars ($10,000,000) plus interest, and additional punitive damages in an amount to be determined at trial;

3.    Grant judgment against third party defendant Smith and in favor of Avalon related to the derivative claims in an amount to be determined at trial, not

less than ten million dollars ($10,000,000) plus interest, and additional

punitive damages in an amount to be determined at trial;

4.    An order rescinding Avalon's issuance of the Preferred Stock to Third Party

Defendant Smith and other insiders and enjoining future sales of Preferred

Stock to Third Party Defendant Smith and other insiders;

5.    An order rescinding pledges of stock by Avalon to the trust as collateral for

the SERP and enjoining future pledges of repurchased stock to such trust as

collateral for the SERP;

6.    An order rescinding Avalon's contributions to the SERP and enjoining

future contributions to the SERP;

7.    An order rescinding Avalon's contributions to the separate retirement plan

for Third Party Defendant Smith and enjoining future contributions to the

separate retirement plan for Third Party Defendant Smith;

8.    An order rescinding Avalon's lending cash to executives and insiders to

purchase Avalon's stock enjoining Avalon from lending cash to executives

and insiders to purchase Avalon's stock in the future;

9.    An order rescinding Avalon's Lease Payments and enjoining future Lease

Payments;

10.    An order rescinding Avalon's extension of the term of Third Party

Defendant Smith's Common Stock Purchase Warrants and enjoining future

extensions of the term of Third Party Defendant Smith's Common Stock Purchase Warrants;

11. Order inspection of the books and records of Avalon as demanded by Ravenswood;

12. Order awarding Ravenswood the costs and disbursements of prosecuting this action, including reasonable attorneys' fees and expenses;

13. Order that the non-controlling shareholders be certified as a class, that Ravenswood be named lead Ravenswood for the class, and that Ravenswood' counsel be designated as counsel representing the class; and

14. Order such other and further relief as this Court deems just and proper.

Dated: January 26, 2009

s/   Leif E. Swedlow
Leif E. Swedlow, OBA #17710
ANDREWS DAVIS
A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELLORS AT LAW
100 N. Broadway, Suite 3300
Oklahoma City, OK  73102-8812
Telephone:  (405) 272-9241
Fax:  (405) 235-8786
E-mail:  lswedlow@andrewsdavis.com

ATTORNEYS FOR DEFENDANTS' and THIRD-
PARTY PLAINTIFFS, RAVENSWOOD
INVESTMENT COMPANY, L.P., and
RAVENSWOOD INVESTMENTS III, L.P.

AND

LAW OFFICE OF WILLIAM COUDERT RAND
William C. Rand, Esq.
711 Third Ave., Suite 1505
New York, New York 10017
Phone: (212) 286-1425; fax: 212-599-7909
Email:  wcrand@wcrand.com
Attorneys for Ravenswood
(seeking *pro hac vice* admission)

LAW OFFICE OF MATTHEW J. DAY
Matthew J. Day, Esq.
380 Lexington Avenue, Suite 1700
New York, NY 10168
Phone: (212) 673-0484 fax: 646-349-5783
Email: mjday@mjdaylaw.com
Attorneys for Ravenswood
(seeking *pro hac vice* admission)

JURY TRIAL DEMANDED

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2009, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Rodney Nixon
Eric Gray
Avalon Correctional Services, Inc.
13401 Railway Drive
Oklahoma City, Oklahoma 73114
e_gray@avaloncorrections.net
rnixon@avaloncorrections.net

s/ Leif E. Swedlow
Leif E. Swedlow

## VERIFICATION

STATE OF NEW YORK      )
                       )    SS:
COUNTY OF QUEENS     )

     Robert E. Robotti, of lawful age, being first duly sworn, upon oath states that I have read the foregoing Answer, Counterclaims, and Third Party Claims in the action entitled Avalon Correctional Services, Inc. v. Ravenswood Investment Company, L.P. et al., Index No. _____ _____, that I am familiar with the matters set forth therein, and that the same are true and correct.

THE RAVENSWOOD INVESTMENT COMPANY, L.P.

AND

RAVENSWOOD INVESTMENTS III, L.P.

BY: RAVENSWOOD MANAGEMENT COMPANY, L.L.C., their general partner

By: _____
Robert E. Robotti
Managing Member

     Subscribed and sworn to before me this 23rd day of January, 2009.

_____
Notary Public

(SEAL)

My Commission Expires: _____

My Commission Number: _____

EDWARD B. ROBOTTI
Notary Public, State of New York
No. 41-3313695 Queens County
Commission Expires June 30, 2010