**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| RAVENSWOOD INVESTMENT COMPANY, L.P., and RAVENSWOOD INVESTMENTS III, L.P., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.  09-CV-00070-R |
| AVALON CORRECTIONAL SERVICES, INC., TIFFANY SMITH and DONALD E. SMITH, | ) ) ) ) | |
| Defendants. | ) ) | |

---

**AGREED MOTION TO DROP PARTY AND
STIPULATION AND AGREEMENT OF SETTLEMENT**

---

# **TABLE OF CONTENTS**

I.   THE ACTION ............................................................................................ 2

II.  WITHDRAWAL OF MOTION TO DISMISS AND AGREED MOTION
     TO DROP RIC ...................................................................................... 4

III. THE REMAINING ACTION AFTER DISMISSAL OF RIC .............................. 7

IV.  TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT ............... 9

       A.   Summary of the Settlement Terms ................................................. 10

       B.   Preliminary Approval, Notice, and Settlement Hearing ................. 12

       C.   Release ........................................................................................ 13

       D.   Preservation of Claims ................................................................. 14

       E.   Attorney's Fees and Costs ............................................................ 15

       F.   Effective Date and Termination ..................................................... 16

       G.   Miscellaneous Provisions .............................................................. 17

V.   THE PRELIMINARY ORDER AND REQUESTED RELIEF ............................ 18

       A.   The Settlement Satisfies the Standard for Preliminary Approval .... 19

             1.   The Settlement Was Fairly and Honestly Negotiated ........... 19

             2.   The Settlement Resolves the Uncertain and Costly
                  Course of Further Litigation ............................................. 20

             3.   The Settlement Confers Substantial Benefits ...................... 21

             4.   The Parties Agree that the Settlement Is Fair
                  and Reasonable .............................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, 2006 U.S. Dist.
LEXIS 63260, *5 (S.D.N.Y.  Sept. 6, 2006). ..................................................... 20, 22

*Gottlieb v. Q.T. Wiles*,
11 F.3d 1004 (10th Cir. 1993).................................................................................. 18

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1996)....................................................................................... 18

*In re King Resources Co., Sec. Litig.*,
420 F. Supp. 610 (D. Col. 1976) ..............................................................................21

*In re Paine Webber Ltd. P'ships Litig.*,
147 F.3d 132 (2d Cir. 1998)..................................................................................... 18

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................. 18

*Jones v. Nuclear Pharmacy, Inc.*,
741 F.2d 322 (10th Cir. 1984).................................................................................. 20

*Maher v. Zapata, Corp.*,
714 F.2d 436 (5th Cir. 1983).................................................................................... 18

*Newman-Green, Inc. v. Alfonzo-Larrain*,
490 U.S. 826 (1989) ................................................................................................... 4

*Oppenlander v. Standard Oil Co.*,
64 F.R.D. 597 (D. Colo. 1974).................................................................................. 20

*Ross v. Bernhard*,
396 U.S. 531 (1970) .................................................................................................... 5

*Wilkerson v. Martin Marietta Corp.*,
171 F.R.D. 273 (D. Colo. 1997)................................................................................ 20

*Williams v. First Nat'l Bank*,
216 U.S. 582 (1910) .................................................................................................. 18

**STATUTES**

California Civil Code, Section 1542 ................................................................................. 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 3

Fed. R. Civ. P. 19(a)(1) ................................................................................................ 5

Fed. R. Civ. P. 19(b) .................................................................................................... 5

Fed. R. Civ. P. 21 ..................................................................................................... 3, 4

Fed. R. Civ. P. 23.1 .................................................................................................. 9, 12

Fed. R. Civ. P. 23.1(c) ................................................................................................ 19

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

RAVENSWOOD INVESTMENT )
COMPANY, L.P., and RAVENSWOOD )
INVESTMENTS III, L.P., )
                                      )
            Plaintiffs, )
                                       )
v. )      Case No.  09-CV-00070-R
                                       )
AVALON CORRECTIONAL )
SERVICES, INC., TIFFANY SMITH )
and DONALD E. SMITH, )
                                       )
            Defendants. )

## AGREED MOTION TO DROP PARTY AND
## STIPULATION AND AGREEMENT OF SETTLEMENT

This Agreed Motion to Drop Party and Stipulation and Agreement of Settlement

(the "Stipulation"), dated as of February 22, 2012, is made and entered into pursuant to

Rule 23.1 of the Federal Rules of Civil Procedure and contains the terms of a Settlement

among the following by and through their counsel:  Plaintiff Ravenswood Investments

III, L.P. ("Ravenswood" or "Plaintiff"), for itself and derivatively on behalf of Avalon

Correctional Services, Inc. ("Avalon" or the "Company"); to be dropped party Plaintiff

Ravenswood Investment Company, L.C. ("RIC" and together with Ravenswood,

"Plaintiffs"); Defendant Tiffany Smith ("Tiffany Smith"); Defendant Donald E. Smith

("Donald Smith"); and Defendant and Nominal Defendant Avalon (collectively, the

"Settling Parties").   The Stipulation including the definitive Settlement Agreement

attached hereto as Exhibit 1 (the "Settlement Agreement" or "Agreement") and

incorporated herein, is intended by the Settling Parties to fully, finally, and forever

resolve, discharge, and settle the Released Claims (as defined in ¶ 1.26 of the Settlement

Agreement[1]), upon and subject to the terms and conditions hereof including, subject to the approval of the Court.

## I.   THE ACTION

On January 16, 2009, Avalon instituted the above-captioned action (the "Action") by filing a *Complaint for Declaratory Judgment* regarding any inspection demand made by Ravenswood and RIC.

On January 26, 2009, Ravenswood and RIC counterclaimed, alleging derivative, direct, and class claims against Avalon and Donald Smith.  On May 6, 2009, the Court granted in part and denied in part a motion to dismiss filed by Avalon and Donald Smith. The Court dismissed all direct and class claims alleged in the First through Eighth, Tenth, and Eleventh Counterclaims.  On July 27, 2009, the Court also granted partial summary judgment to Ravenswood and RIC on their Ninth Counterclaim for inspection of the books and records of Avalon.  This ruling also resolved Avalon's claim for declaratory judgment.

On September 22, 2009, the Court realigned the parties, designating Ravenswood and RIC as the Plaintiffs, on the one hand, and Avalon and Donald Smith as Defendants, on the other hand.

On December 1, 2009, Ravenswood and RIC filed an Amended Complaint, alleging derivative, direct, and class claims against Avalon, Donald Smith, and Tiffany

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement attached hereto as Exhibit 1.

Smith.  Ravenswood asserted in the Complaint that Mr. Smith and his wife had breached their fiduciary duties and are liable for waste and usurpation of corporate control.

Following motions to dismiss under Fed. R. Civ. P. 12(b)(6), on February 23, 2010, the Court dismissed all direct and class claims asserted by the Plaintiffs and dismissed the Eighth through Tenth, Thirteenth through Eighteenth, and Twentieth Claims in their entirety.  The Court also dismissed all claims asserted against Tiffany Smith in the First, Second, Fifth, Seventh, Ninth, Eleventh, and Nineteenth Claims.

On June 4, 2010, the parties recognized that RIC was not diverse from Avalon. On July 20, 2010, the Court entered an order severing and dismissing claims in an attempt to preserve jurisdiction as to claims between the diverse parties and then dismissed, entered partial summary judgment and dismissed the remainder of the case without prejudice to its refilling in state court.

Ravenswood and RIC appealed that ruling.  On July 8, 2011, the Tenth Circuit issued an opinion vacating this order.  (Opinion, Dkt. #138.)  The Tenth Circuit determined that subject-matter jurisdiction had been lacking at the time Avalon filed this Action, but a "district court can dismiss a dispensable nondiverse party pursuant to Fed. R. Civ. P. 21 to cure a jurisdictional defect at any point in the litigation, including after judgment has entered."  (*Id*. at 8.)  The Tenth Circuit then found that this Court had to power to "dismiss a dispensable nondiverse party to effect complete diversity, creating a case which could then proceed to conclusion in federal court." (*Id*. at 11-12.)  Following

3

remand, the Plaintiffs moved to dismiss the Action in its entirety case without prejudice to its refiling in state court due to the lack of diversity.  (Dkt. #151.)

This Court, on request of the Parties, held the time for Defendants to respond to the motion to dismiss in abeyance pending settlement discussions between the Parties. On February 22, 2012 and on November 13, 2012, the Parties held mediation sessions in Chicago.  In addition, the Parties engaged in arbitration on one final provision of the settlement agreement.  Ultimately the Parties were successful in reaching a Settlement Agreement as described in this Stipulation.

## II.   WITHDRAWAL OF MOTION TO DISMISS AND AGREED MOTION TO DROP RIC

As a part of the settlement of claims, the Plaintiffs hereby seek to stay, in part, the motion to dismiss, and the Parties jointly move the Court to sever and drop RIC, as it is, solely for the purposes of settlement, a dispensable party with respect to Ravenswood's claims and, at least in the context of the settlement, its absence will not result in prejudice to any party or person in interest.  As noted by the Tenth Circuit, this Court may properly preserve jurisdiction in this case by dropping a nondiverse, dispensable party.  Indeed, the Supreme Court has long recognized that "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered."  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989).

In so doing, the Court should also consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation.  *Id*. at 837-38.  As it has already

4

been determined that RIC is nondiverse, the only remaining considerations are dispensability and prejudice.

Ravenswood's claims have been brought either as (1) derivative claims; (2) class claims for a purported class of shareholders; or (3) direct claims benefiting only itself. *See Ross v. Bernhard*, 396 U.S. 531, 538-39 (1970).  Under Fed. R. Civ. P. 19(a)(1), a party should be joined if feasible (*i.e.,* is a necessary party) if, in that person's absence, the court cannot afford complete relief among the existing parties, or that person claims an interest in the subject of the action and, disposing of the action in his absence may impair his ability to protect that interest or leave an existing party subject to a substantial risk of incurring multiple or inconsistent obligations due to the interest.

In light of the settlement, RIC is a dispensable party to the claims between Ravenswood and Defendants.  Given that RIC has consented to the settlement, the parties agree that the Court can afford complete relief between Ravenswood and Defendants without RIC and such rulings will not impair RIC's ability to protect its interests.  In these circumstances, a court would not be obliged to join RIC as a necessary party plaintiff.

Even if RIC were a necessary party, under these circumstances the parties agree it is not indispensable.  When a person who is required to be joined if feasible cannot be joined, the Court determines whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed," considering the factors set forth in Fed. R. Civ. P. 19(b).  Applying this analysis to the direct, individual claims of

Ravenswood, there is no reason to treat RIC as indispensable for all of the reasons stated above.

While the parties appear to disagree whether the active litigation of the claims by RIC in a parallel state court proceeding, along with these claims in this court would, in equity and good conscience support dropping RIC as a party, the settlement removes the risk of parallel or inconsistent proceedings. The settlement provides that, in the event the settlement is not approved by the Court, the parties will revert to their pre-settlement positions and that this Court will review, if and only if necessary, whether Ravenswood's case should be dismissed without prejudice at that juncture.

Similarly, judicial economy favors dropping RIC as a party so that this Court can proceed to consider the approval of the proposed Settlement Agreement. As the Tenth Circuit noted, "[w]hether judicial economy favors such a result" is to be considered by this Court. (Opinion at 14.) This Court and the Parties have expended substantial resources in litigating this case. The Parties already briefed many important legal issues and the Court had narrowed the scope of the litigation. Now, the Parties have mediated [and arbitrated] their dispute and have reached the Settlement that is set forth below. If approved, that settlement moots any potential prejudice. Given the both Ravenswood and RIC support approval there is no prejudice at this stage.

As with the issue of equity and good conscience, the settlement provides that, in the event the Settlement is not approved by the Court, the parties will revert to their pre-settlement positions and that this Court will review, if and only if necessary whether in a

6

continued litigation stage, judicial economy and prejudice factors favor dismissal of the entire claim without prejudice.

## III.   THE REMAINING ACTION AFTER DISMISSAL OF RIC

There is diversity of citizenship between Ravenswood and all Defendants.  The Court has subject-matter jurisdiction over the claims brought by Ravenswood. Ravenswood has stated derivative claims for, *inter alia*, breach of fiduciary duty, unjust enrichment, and recklessness and/or gross negligence.

Ravenswood asserted in the Complaint that Mr. Smith and his wife had breached their fiduciary duties and are liable for waste and usurpation of corporate control. Ravenswood alleged that Smith orchestrated the departure of all of Avalon's other directors, and then caused Avalon to enter into self-dealing transactions.  It also alleged that Smith caused Avalon to issue to himself and his wife one million shares of voting, dividend-bearing, convertible preferred stock at an unfair, preferential price and to repurchase over 2.3 million shares of Avalon common stock for the sole purpose of pledging it to a Supplemental Executive Retirement Plan ("SERP") trust that they controlled.   Ravenswood believes that the claims asserted in the Action have merit. However, Ravenswood and its counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and appeal.

Defendants expressly have denied and continue to deny each and all of the claims and contentions alleged by Ravenswood or RIC in this Action, whether or not dismissed

or adjudicated.  Defendants have asserted that Avalon has spent the last seven-plus years dealing with unnecessary and costly demands of Ravenswood which, despite their complaints, continued to purchase Avalon's shares including substantial purchases after this litigation was filed.  Defendants also disputed Ravenswood's allegations, noting that the change in directors was the result of financing-related issues that were well-known and disclosed to Avalon's shareholders; that the issuance of preferred shares was required for new financing, and that the SERP benefited several Avalon employees and allowed Avalon to attract and retain top-talent in a field dominated by government employers with full pension plans.  Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against any of them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Defendants also have denied and continue to deny, *inter alia*, the allegations that Ravenswood, RIC, Avalon, or shareholders of Avalon have suffered damage or that Ravenswood, RIC, Avalon, or shareholders of Avalon were harmed by any of the conduct alleged in the Action.

Despite each side believing that the law and facts support their legal positions, the parties have concluded that further conduct of the Action would be protracted, expensive, and distracting and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation, including the attached Settlement Agreement.  Therefore, the Settling Parties, by and through their undersigned attorneys, have engaged in good faith, arms'-length discussions with regard

to the possible settlement of this Action and the Settling Parties have reached an agreement in principle providing for the proposed settlement of the Action on the terms and conditions set forth in Settlement Agreement attached as Exhibit 1. The terms of the Settlement Agreement are incorporated herein by reference.

In reaching the Settlement, the Settling Parties have also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Action. The Settling Parties believe that the Settlement is in the best interests of Avalon and current Avalon shareholders.[2]

## IV.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

The Settlement Agreement which is subject to this Court's approval, resolves all claims between them including those pending in this Action. Subject to a Final order approving it under Fed. R. Civ. P. 23.1, the Settling Parties STIPULATE AND AGREE that the terms and conditions upon which they have agreed as set forth in the Settlement Agreement attached as Exhibit 1 will finally and fully compromise, settle, and release the

---

[2]    Neither this Stipulation nor any document referred to herein nor any action taken to carry out the Settlement Agreement is, may be construed as, or may be used as an admission by or against any of Party of any fault, wrongdoing, or liability whatsoever. In addition, entering into or carrying out the Settlement Agreement (or the Exhibits hereto) and any negotiations or proceedings related thereto shall not in any event be construed as, or be deemed to be evidence of, an admission or concession with regard to the merit (or lack of merit) in Ravenswood or RIC's claims or Defendants' denials and defenses, and shall not be offered by any of the Settling Parties or received in evidence in any action or proceeding in any court, administrative agency, or other tribunal for any purpose whatsoever other than to enforce the provisions of the Settlement Agreement or any related agreement or release, or in any subsequent action against or by the a Settling Party to support a claim or defense of *res judicata*, collateral estoppel, release, or other theory of claim or issue preclusion or similar defense.

claims asserted in the Action and the Action will be dismissed with prejudice upon the conclusion of the settlement.

The brief description of the Settlement contained in this Stipulation is qualified by reference to the terms of the Settlement Agreement and its related exhibits which are set forth in Exhibit 1 to this Stipulation.  In the event of any inconsistency, the terms of the Settlement Agreement and its related exhibits controls.

### A.    Summary of the Settlement Terms

In brief summary, Avalon will submit an offer to all of its Non-Management Shareholders, offering to purchase their Avalon Common Shares for a purchase price consisting of (i) $4.05 in cash per share plus (ii) their pro rata share of any unused amount of the Fee Pool; and plus (iii) a Preferred B Share with liquidation participation of $1.75.  If any Non-Management Shareholders hold 1,000 or less Avalon Common Shares, Avalon has the option of paying $1.75 cash per Tendered Share instead of issuing the Preferred B Share.  This provides for total consideration valued at between $5.80 and $6.10 per share.  The Avalon stock is quoted on the NASDAQ Pink Sheets and the trading market for the Shares is limited and sporadic.  In 2012, there were, through November 6, 2012, five days with reported trades of an aggregate of 5,124 Shares and the price ranged from $1.51 to $ 3.50.

The Preferred B Shares may be called in full or in part at any time at par plus accrued unpaid dividends.  In order to accept the offer, a Non-Management Shareholder must provide a full release to all Defendants in the form set forth on Exhibit I to the

Settlement Agreement.  If any Non-Management Shareholders fail to accept this offer, they retain their Common Shares and shall be deemed to have and by operation of the Final Judgment shall have fully, finally and forever released and discharged all claims against the Released Parties.

In addition, the Settlement Agreement provides that all Persons included within the Robotti Group must accept Offer to Purchase and no Person included within the Robotti Group will ever purchase any shares of Avalon.[3]  The Robotti Group consists of persons affiliated with Plaintiff, RIC and Robert Robotti.  The Robotti Group represents and warrants that the Robotti Group collectively are the beneficial owner of approximately 852,368 shares of Avalon Common Shares and all rights associated therewith.

Further, if Avalon defaults in payment obligations to holders of Preferred B Shares and does not cure the default within 10 business days after written notice of said default from a holder or holders of Preferred B Shares, owning of record at least 50% of the then outstanding Preferred B Shares, said holder(s) shall be entitled to liquidated judgment in this Court for the balance owing on the Preferred B Shares plus any reasonable costs and fees of obtaining said judgment.

---

[3]     In addition another large shareholder of Avalon stock, referred to in the agreement as the Collery Interests, has agreed to tender its shares as part of the transaction. The Collery Interests consist of persons affiliated with Peter M. Collery; SC Fundamental Value Fund, LP; SC Fundamental Value BVI, Ltd.; and the SC Fund Management LLC Employee Savings and Profit Sharing Plan.  The Collery Interests represent and warrant that the Collery Interests collectively are the beneficial owner of 164,500 shares of Avalon Common Shares and all rights associated therewith.

### B.    Preliminary Approval, Notice, and Settlement Hearing

The Agreement provides that as soon as practicable upon execution of this Stipulation and the Settlement Agreement, Defendants' counsel shall submit the Settlement Agreement to the Court and shall apply for entry of the Preliminary Order substantially in the form of Exhibit D to the Settlement Agreement requesting, *inter alia*, preliminary approval of the Settlement and approval for the mailing of the Notice, substantially in the form of Exhibit C to the Settlement Agreement, which shall include the general terms of the Settlement and the date of the Settlement Hearing.  This motion is intended to satisfy that condition.

Avalon also agrees in the Settlement Agreement to undertake the administrative responsibility for, and shall pay the costs of, giving notice of the Settlement to current Avalon shareholders in the form attached as Exhibit C to the Settlement Agreement and in a manner approved by the Court as complying with Fed. R. Civ. P. 23.1.

Prior to the Settlement Hearing, Avalon's counsel is required to file with the Court an appropriate affidavit of mailing with respect to the mailing of the Notice to the Avalon Non-Management Shareholders.

The Settling Parties request that after the Notice is mailed, the Court hold the Settlement   Hearing and approve the Settlement of the Action as set forth in the Settlement Agreement and herein and enter a Final Judgment substantially in the form attached as Exhibit A to the Settlement Agreement (1) approving the terms of the Settlement as fair, reasonable, and adequate; and (2) dismissing with prejudice all claims

that were asserted or could have been asserted in the Action against any of the Released Parties.

## C.     Release

Upon the Effective Date, Avalon and all current Avalon Non-Management Shareholders shall be deemed to have, and by operation of the Judgment entered in the Action shall have fully, finally, and forever released, relinquished, and discharged all Released Claims (including Unknown Claims) against the Released Parties, whether or not any such shareholder has executed a release as part of the offer to purchase.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Plaintiff, current Avalon Non-Management Shareholders, and Avalon (as nominal defendant in the Action) shall be deemed to have, and by operation of the Judgment, shall have waived all provisions, rights, and benefits conferred by any law, rule, or regulation of any state or territory of the United States or any other country, or principle of common or civil law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which provides,

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR

Nothing in the Settlement Agreement shall in any way impair or restrict the rights of any Settling Party to enforce the terms of the Settlement Agreement.

13

Pending the Court's determination of whether the Settlement should be approved and applied in the Action, the parties hereby request that all proceedings and all further activity between the Settling Parties regarding or directed towards the Action, save for those activities and proceedings relating to this Stipulation and the Settlement, be stayed.

Pending the Court's determination of whether the Settlement should be approved, neither Plaintiff nor any of the current Avalon shareholders, shall commence, maintain, or prosecute against any of Defendants any action or proceeding in any court or tribunal asserting any of the Released Claims.

### D.    Preservation of Claims

Although the parties agree that that the Settlement should be approved, the Settlement Agreement provides for preservation of the claims of RIC in the event that the Court denies approval. Specifically, it provides that pending the Court's determination of whether the Settlement should be approved, the dismissed claims of RIC shall be subject to a tolling agreement, allowing their re-filing in state court if necessary.  Moreover, as noted above, the agreement provides that issues with respect to whether judicial economy, efficiency, and prejudice with regard to the actions by RIC and Ravenswood proceeding in separate courts will be held in abeyance pending the determination of the settlement motion.  If, and only if, the approval is denied will it be necessary or appropriate for this Court to consider those issues.

Specifically the agreement provides that in the event that the Settlement is not approved by the Court or the Settlement is terminated for any reason, the Settling Parties

14

shall be restored to their respective positions in the Action as of the date of February 22, 2012, and all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice to the Settling Parties, shall not be deemed or construed to be an admission by any Settling Party of any act, matter, or proposition, and shall not be used in any manner or for any purpose in any subsequent proceeding in the Action or in any other action or proceeding.

###### E.     Attorney's Fees and Costs

Plaintiff's present and former counsel intend to seek an award of their Litigation Expenses spent in the prosecution of the claims brought in the Action on the basis of the benefits conferred upon Avalon as a result of this Settlement.  Defendants agree not to oppose any application for attorney's fees and costs, to the extent that application does not exceed $600,000 in total, provided that Defendants or their insurer may make such good faith arguments as exist against an award of fees and costs to William Rand, Esq., and associated counsel or staff, to the extent that Defendants or Plaintiff determines such an award is unjustified.

The first $300,000 of any award of Litigation Expenses shall be paid by Avalon's D&O insurer as provided in the Settlement Agreement.  Avalon will also contribute 30 cents per Tendered Share to the Fee Pool as set forth in the Settlement Agreement.  It is anticipated that this contribution will create a "Fee Pool" of $300,000 or more, depending on the number of shares tendered.  The remainder of any Litigation Expenses awarded by the Court after application of the payment by Avalon's insurer shall be paid from the Fee

15

Pool.  To the extent that the Court awards Litigation Expenses in excess of the $300,000 payment by Avalon's insurer plus the Fee Pool, Defendants and Avalon's insurer shall not be liable for such additional amounts and RIC and Ravenswood shall be responsible for any such excess awarded.

Except as provided in the Settlement Agreement, Defendants shall bear no other fees, expenses, costs, or damages incurred by Plaintiff, RIC, or any of their attorneys, experts, advisers, agents, or representatives.  Defendants shall have no responsibility for or liability with respect to the allocation among any counsel for Plaintiff or RIC of the award of Litigation Expenses that the Court may make, and Defendants take no position with respect to such matters.

### F.     Effective Date and Termination

The Settlement shall not become effective until the first date upon which all of the conditions as contained in the Settlement Agreement have been satisfied, unless one or more of the conditions is expressly waived in writing by counsel for each of the Settling Parties.  In particular, the following conditions must have occurred:

1.    The entry of the Judgment by the Court in the Action approving the Settlement and dismissing with prejudice the Action without awarding costs or fees to any Party, except as provided in the Settlement Agreement; and

2.    The Judgment referred to above shall have become Final and no longer subject to review, either by the expiration of the time for appeal therefrom with no appeals having been taken or, if an appeal is taken and not dismissed, by the determination of the appeal by the highest court to which such appeal may be taken in

16

> such manner as to permit the consummation of the
> Settlement in accordance with the terms and conditions
> of the Settlement Agreement.

If the conditions specified in the preceding paragraph are not met, then the Settlement Agreement shall be cancelled and terminated as provided in the Settlement Agreement.

### G.    Miscellaneous Provisions

The Settlement Agreement contains a number of other provision including, *inter alia*, provisions that Settling Parties acknowledge that it is their intent to consummate the terms and conditions of the Settlement and agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Settlement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Settlement.

It also makes clear that the Settling Parties intend this Settlement to be a final and complete resolution of all disputes among them with respect to the Action.   The Settlement Agreement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.   While Defendants deny that the claims advanced in the Action are meritorious, the Settling Parties agree, and the Judgment in the Action will state, that the Action was filed, prosecuted, and defended in good faith and in accordance with the applicable law and Federal Rules of Civil Procedure, and is being settled voluntarily after consultation with competent legal counsel.

It also provides that, without affecting the finality of the Judgment entered in accordance with this Stipulation and the Settlement Agreement, the Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement and Judgment, and the Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement Agreement and Judgment.

## V.     THE PRELIMINARY ORDER AND REQUESTED RELIEF

The law favors preliminary approval of the Settlement.  There is a strong policy favoring compromises which resolve litigation, particularly in complex cases "where substantial judicial resources can be conserved by avoiding formal litigation."    *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1996); *see also Williams v. First Nat'l Bank*, 216 U.S. 582 (1910); *In re Paine Webber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).  Approving a settlement "is within the Court's discretion, which should be exercised in light of the general judicial policy favoring settlement."   *In re Sumitomo Copper Litig.,* 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (internal quotations marks omitted); *see also Gottlieb v. Q.T. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993).

Derivative actions lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome and the typical length of the litigation.  *Maher v. Zapata, Corp.,* 714 F.2d 436, 455 (5th Cir. 1983) (settlements of derivative actions are particularly favored because such litigation is "'notoriously difficult and unpredictable'").

Because the compromise of a derivative action may affect the rights of other shareholders of the corporation, Rule 23.1(c) provides that such compromises are subject to court approval for reasonableness after such notice to shareholders as the court directs.

The Settlement Agreement warrants such approval and by this motion the parties seek it. As a preliminary matter, the Settling Parties seek a Preliminary Order in the form of Ex. D to the Settlement Agreement providing direction as to the form of notice to shareholders and the manner and timing of notice. Specifically, the Settlement Agreement provides that that the notice in the form of Exhibit C shall be sent by Avalon's counsel to all shareholders of record.

## A.     The Settlement Satisfies the Standard for Preliminary Approval

The Tenth Circuit established a four-factor test for assessing whether a proposed settlement is fair, reasonable, and adequate, which includes: (i) whether the proposed settlement was fairly and honestly negotiated; (ii) whether serious questions of law and fact exist placing the ultimate outcome of the litigation in doubt; (iii) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (iv) the parties' judgment that the settlement is fair and reasonable. *Jones v. Nuclear Pharmacy, Inc*., 741 F.2d 322, 324 (10th Cir. 1984).

### 1.     The Settlement Was Fairly and Honestly Negotiated

When examining whether a settlement was fairly and honestly negotiated, district courts within the Tenth Circuit often examine whether the parties "have vigorously advocated their respective positions throughout the pendency of the case." *Wilkerson v.*

*Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997).   Yet, Courts have consistently refused to substitute their business judgment for that of counsel, absent evidence of overreaching.  *Oppenlander v. Standard Oil Co*., 64 F.R.D. 597 (D. Colo. 1974).

In this regard, the Settling Parties have been represented by experienced and capable counsel during the course of this litigation.  Plaintiffs' counsel have evaluated this case following multiple depositions and a review of thousands of pages of documents.

Moreover, it is important to note that the Settlement was negotiated by the Settling Parties, at arm's length.  For more than six months, the Settling Parties were engaged in extensive negotiations regarding a potential settlement.   The negotiations culminated with a lengthy mediation in late February 2012 presided by a skilled and experienced mediator.[4]  Due to disputes over certain terms of the Settlement Agreement, the Parties conducted a second mediation session on November 13, 2012.   As a result of the settlement discussions, the mediation sessions and other conferences, the Settling Parties carefully negotiated the terms of the Settlement.

2.      **The Settlement Resolves the Uncertain and Costly Course of Further Litigation**

Courts have recognized that "because shareholder derivative actions are notoriously difficult and unpredictable, … settlements are favored."   *See AOL Time*

---

[4]      William Hartgering is a highly regarded JAMS mediator specializing in complex matters with over 30 years of alternative dispute resolution experience and was jointly chosen by the parties to preside over the mediation.

*Warner S'holder Derivative Litig.*, 2006 WL 2572114, 2006 U.S. Dist. LEXIS 63260, *5

(S.D.N.Y.  Sept. 6, 2006).   Here, the risks and cost that go hand-in-hand with protracted

litigation, the risks of being unable to convince a jury of Defendants' liability and the

further risk of parallel or inconsistent proceedings, as stated above, are outweighed by the

substantial benefits the Settlement confers to the Company and its shareholders (as stated

below).  In this respect, "'It has been held proper to 'take the bird in the hand instead of a

prospective flock in the bush'."  *In re King Resources Co., Sec. Litig.*, 420 F. Supp. 610,

625 (D. Col. 1976) (citations omitted).

In sum, for the reasons set forth in Section II, and above, the Settlement resolves

three years of litigation, obviates further costs and risks, and will allow the Company to

direct its attention to its substantive business.

### 3.   The Settlement Confers Substantial Benefits

The terms of the Settlement support preliminary approval.  The Settling Parties

stipulate and agree that the Settlement provides substantial benefits to Avalon and its

shareholders and is fair to the Company.

Ravenswood believes that as direct a proximate result of this action, there have

been significant corporate governance reforms adopted by the Board.  At the time of

filing of this action, Avalon had a sole inside director.  Ravenswood believes that as

direct a proximate result of this action, the Board was increased to five director seats.  In

addition, there has been an increase in the independence of the Board by the addition of

several outside directors.   Moreover, Ravenswood prevailed on its books and records

21

claims, thereby substantially improving transparency.  In the view of Ravenswood, these corporate therapeutics are of a substantial benefit to Avalon.  The corporate governance reforms, which the Court likely would not have the power to implement absent this Settlement, confers a substantial benefit to the Company and are reason enough to approve the Settlement.  *See AOL Time Warner S'holder Derivative Litig*., 2006 WL 2572114, 2006 U.S. Dist. LEXIS 63260, *5 (S.D.N.Y.  Sept. 6, 2006).

The Complaint also asserts (and the defendants deny) that Smith and several managers of Avalon obtained unfair benefit by the use of corporate assets to re-purchase stock and place it in trust for the management shareholders, and as a result of defendants conduct the stock price was depressed and the liquidity of the stock was adversely impacted.  The offer to purchase the shares at the stated price not only is at a price above the average closing price of the stock, it also provides liquidity.  Because it is a very thinly traded stock, the ability of Avalon shareholders who disagree with the type of actions and decisions made by management of Avalon to sell their stock at fair price is extremely limited without this Settlement.  The Settlement provides a one-time liquidity event.  In addition, as provided for in the Settlement, Preferred Shares will also be issued as additional compensation to the Non-Management Shareholders.

### 4.  The Parties Agree that the Settlement Is Fair and Reasonable

The Settling Parties agree that both the form and method of service of the notice are reasonable, appropriate and adequate and respectfully ask that the court approve and enter the Preliminary Order in substantially the form of Exhibit D.  The Settling Parties

also stipulate and agree that the Settlement provides substantial benefits to Avalon and its shareholders. For the reasons stated above, the Settling Parties believe that the Settlement is a fair, reasonable and adequate compromise of the action, which is mutually beneficial. The Settling Parties jointly request approval of the Settlement.

Executed this 16th day of November, 2012.


(Intentionally Left Blank)

Respectfully Submitted,


*s/James Sandnes (signed by filing counsel with permission)*

James Sandnes (admitted *pro hac vice*)
Maria Moukides (admitted *pro hac vice*)
Boundas, Skarzynski, Walsh & Black, LLC
One Battery Park Plaza, 32nd Floor
New York, NY
(212) 820-7700
(212) 820-7740 (Facsimile)
jsandnes@bswb.com
mmoukides@bswb.com
        -and-
Matthew J. Day, Esq. (admitted *pro hac vice*)
The Law Office of Matthew J. Day PLLC
380 Madison Avenue, 22nd Floor
New York, New York 10017
(212) 673-0484
(646) 349-5783 (Facsimile)
mjday@mjdaylaw.com
        -and-
Lief E. Swedlow, OBA #17710
Lance E. Schneiter, OBA #19564
Andrews Davis
A Professional Corporation
100 N. Broadway, Ste. 3300
Oklahoma City, OK 73102-8812
(405) 272-9241
(405) 235-8786 (Facsimile)
lswedlow@andrewsdavis.com
leschneiter@andrewsdavis.com


ATTORNEYS FOR RAVENSWOOD
INVESTMENT COMPANY, L.P., and
PLAINTIFF RAVENSWOOD
INVESTMENTS III, L.P.


24

s/*Judy Hamilton Morse*

Judy Hamilton Morse, OBA #6450
Susan E. Huntsman, OBA #18401
Brandee L. Bruening, OBA #22507
        Of the Firm
CROWE & DUNLEVY
A Professional Corporation
20 North Broadway, Suite 1800
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
judy.morse@crowedunlevy.com
susan.huntsman@crowedunlevy.com
brandee.bruening@crowedunlevy.com

        -and-

Eric Gray, OBA #3548
Rodney Nixon, OBA #19686
Avalon Correction Corporation
13401 Railway Drive
Oklahoma City, OK  73114
(405) 752-8802
(405) 752-8852 (Facsimile)
e_gray@avaloncorrections.net
rnixon@avaloncorrections.net

ATTORNEYS FOR DEFENDANT
AVALON CORRECTIONAL SERVICES,
INC.

25

*s/James A Kirk (signed by filing counsel with permission)*

James A. Kirk, OBA #5046
James M. Chaney, OBA #1606
KIRK & CHANEY
101 Park Avenue, Suite 800
Oklahoma City, Oklahoma 73102
(405) 235-1333 Telephone
(405) 235-5914 Facsimile

ATTORNEYS FOR DEFENDANTS
DONALD E. SMITH AND TIFFANY
SMITH